IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| LUCAS ASKER NIELSEN, ) | |
| JOY ANN NIELSEN, ) | |
| ) | Bankruptcy No. 15-01596 |
| Debtors. ) | |
| ) | |

**ORDER RE: REAFFIRMATION AGREEMENTS**

This matter came before the Court on February 9, 2016 for hearing on two reaffirmation agreements with Collins Community Credit Union. Debtors appeared personally with Attorney David Nadler. After hearing statements from Mr. Nadler and Debtors, the Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

**STATEMENT OF THE CASE**

Debtors seek to reaffirm two debts secured by two 2014 Jeep Wranglers. Debtors have a negative net monthly income of $1,422.22, so the presumption of undue hardship arises under 11 U.S.C. § 524(m)(1). Debtors testified that they have not missed a payment on the vehicles and that they both need a vehicle to get to work. Mr. Nadler recommended approving the reaffirmation agreements because the interest rates are very good and obtaining financing for replacement vehicles would result in a much higher interest rate.

The Court took the matter under advisement to review its previous decisions on reaffirmation agreements on high-cost vehicles. Having reviewing those decisions, the Court now denies both reaffirmation agreements.

**FINDINGS OF FACT**

Debtors seek to reaffirm over $60,000 in debt secured by two 2014 Jeep Wranglers: a Jeep Wrangler Unlimited Sahara (the "Sahara") and a Jeep Wrangler Unlimited Sport (the "Sport"). Debtors currently owe $36,661.55 on the Sahara at 7.99% annual fixed rate of interest. The debt would be repaid in monthly payments of $680 for 65 months. The current market value of the Sahara is $33,090.00. Debtors also owe $24,837.29 on the Sport at 3.99% annual fixed rate of interest. The debt would be repaid in monthly payments of $533 for 50 months. The current market value of the Sport is $27,190.00.

Debtors stated that they both work and need the vehicles to get to work. Mr. Nadler acknowledged that vehicles were expensive, but nevertheless recommended approving the reaffirmation agreements. Mr. Nadler stated that Debtors would be unable to get such good interest rates post-bankruptcy. He said that any vehicle financing post-bankruptcy would probably be at an 18% interest rate. Debtors' Schedules I and J, and the reaffirmation agreement, show a monthly deficit of $1,422.22.

## CONCLUSIONS OF LAW

"One of the fundamental goals of the Bankruptcy Code is to provide debtors with a fresh start." In re Duffy, No. BR 11-00841, 2011 WL 4344564, at *2 (Bankr. N.D. Iowa Sept. 15, 2011). "The Code effectuates the fresh start by granting the 'honest but unfortunate debtor' a discharge of certain debts." Id.

> If and when a discharge is entered in favor of the debtor, § 524(a)(2) provides that the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." Despite this protection, a debtor may voluntarily agree in writing to repay, or "reaffirm" a debt that would be dischargeable. Section 524(c) governs the enforceability of a reaffirmation agreement between the debtor and creditor. Section 524(c) allows a debtor to reaffirm an otherwise-dischargeable debt unless reaffirmation would pose an undue hardship on the debtor.

Id. "The Bankruptcy Code specifically requires a hearing and court approval if the monthly payments on the reaffirmed debt exceed the debtor's net monthly income." Id. at *3.

If the payments under the reaffirmation agrement exceed the debtor's net monthly income, "a presumption exists that the reaffirmation agreement imposes an 'undue hardship' to the debtor." Id. Before the bankruptcy court will approve a reaffirmation agreement, debtors must rebut this presumption. Id. "The appropriate financial inquiry ascertains whether the debtors' expenses exceeded

3

their income and whether the reaffirmed debt is secured by a necessary item." Id. (internal quotation marks omitted).

This Court has previously considered similar facts and issued written rulings on agreements to reaffirm significant debt secured by high-cost vehicles. These cases show that the most important analysis for a court, when considering whether to approve a reaffirmation agreement, involves weighing a debtor's ability to make the monthly payments against the need for the vehicle securing the debt. Compare In re Minor, No. BR 12-00416, 2012 WL 4482575 (Bankr. N.D. Iowa Sept. 26, 2012) (approving reaffirmation of $14,486.98 at 5.75% interest owed on pickup where debtor testified to making specific changes resulting in net monthly surplus of $423.09), with In re Duffy, No. BR 11-00841, 2011 WL 4344564 (Bankr. N.D. Iowa Sept. 15, 2011) (denying reaffirmation of $26,946.56 at 20.95% interest owed on pickup where debtors had monthly deficit of $350.54), and In re Bartz, No. BR 10-01897, 2011 WL 671991 (Bankr. N.D. Iowa Feb. 17, 2011) (denying reaffirmation of $26,038.55 at 7.99% interest owed on pickup where debtor had deficit of $321.86).

In particular, the need for a vehicle alone is insufficient to show the need for a high-cost vehicle. In re Tarnowski, No. BR. 08-02262, 2009 WL 424999, at *3 (Bankr. N.D. Iowa Feb. 11, 2009) ("Debtors have not demonstrated the need for a luxury vehicle or that they have explored less expensive options."); In re Duffy,

2011 WL 4344564, at *3 ("[D]ebtor cannot overcome the presumption of undue hardship merely by showing that he needs a vehicle."). The Court bases its analysis on these cases.

## ANALYSIS

Debtor's monthly expenses exceed their monthly income by $1,422.22. Of this deficit, $1,213.00 is payment on the debts that Debtors now seek to reaffirm. Debtors contend that they have been able to make the payments so far—that they have never missed a payment. They do not, however, note specific changes in income or expenses that will allow them to continue maintaining these payments and stay out of bankruptcy.

Debtors noted that they need vehicles to get to work. However, Debtors have not demonstrated a need for these newer, high-end vehicles. Mr. Nadler noted that, if Debtors had to purchase other vehicles, they would likely pay up to 18% in interest. The Court notes that two $15,000 vehicles ($30,000 total in debt), at 18% annual interest for 60 months would result in monthly payments of $761.80. That would be a savings of $451.20 a month. The Court is not persuaded that reaffirming these debts is the only way for Debtors to have reliable transportation to and from work.

Because Debtors' expenses exceed their income, they must rebut the presumption that the reaffirmation agreements impose an undue hardship on them.

5

Debtors' mere assertion that they will be able to continue to make the payments and stay out of bankruptcy—combined with the fact that there are less-expensive transportation options available to them—does not rebut the presumption that the payments constitute an undue hardship. The Court cannot approve the reaffirmation agreements.

## CONCLUSION

WHEREFORE, both Reaffirmation Agreements (Doc. #20 and Doc. #21) between Debtors and Collins Community Credit Union are DENIED.

Dated and Entered:
February 12, 2016

_____
**THAD J. COLLINS**
**CHIEF BANKRUPTCY JUDGE**